No.  90-161

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

ROBERT P. BARRETT,

       Plaintiff and Respondent,

-v-

ASARCO INCORPORATED, a New Jersey
corporation,

       Defendant and Appellant.



APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           James M. Ragain and Kyle A Gray; Holland and Hart;
Billings, Montana

       For Respondent:

           Gene A. Picotte, Helena Montana
P. Keith Keller; Keller, Reynolds, Drake, Sternhagen
and Johnson; Helena, Montana

           Submitted on Briefs:  September 6, 1990

                   Decided:  October 25, 1990

Filed:

                       Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

In this case, a jury returned a verdict for plaintiff Robert P. Barrett on his theory that the defendant Asarco, Inc. breached the implied covenant of good faith and fair dealing in the employment relationship. The District Court denied Asarco's motions for directed verdict, judgment notwithstanding the verdict, and new trial and entered its judgment in accordance with the jury's verdict. Asarco appeals. We affirm the District Court.

Asarco raises the following issues on this appeal:

(1) Did the District Court err in denying Asarco's motion for judgment notwithstanding the verdict and directed verdict on the grounds that there is no substantial credible evidence to support the jury's finding that Asarco breached the implied covenant of good faith and fair dealing when it terminated Barrett's employment?

(2) Did the District Court err in admitting into evidence the former trial testimony of the respondent's brother, Sam Barrett?

(3) Did the trial court err in refusing to give Asarco's proposed jury instruction regarding Montana law on the immediate payment of wages to discharged employees?

(4) Did the District Court err in refusing to grant Asarco a new trial based on alleged misconduct by Barrett's counsel?

Barrett worked at Asarco's East Helena smelter for 15 years. He began his employment in 1969 as an hourly worker and in 1973 he was promoted to shift foreman, a salaried managerial position. On November 26, 1983, Barrett injured his back while replacing a

conveyor belt at the Asarco plant.

Approximately five months later, on May 8, 1984, Asarco terminated Barrett's employment. At that time Barrett was still off work and receiving medical treatment. He was being paid full salary and Asarco was paying his medical bills. At the meeting when Barrett was terminated, the plant superintendent, Robert Hearst, confronted Barrett with information alleging that Barrett had been seen by another Asarco employee unloading hay bales at the Lewis and Clark County Fairgrounds in Helena while he was receiving full salary for his back injury from Asarco. According to his testimony, Barrett understood that he was being accused of "bucking bales" at a friend's ranch rather than unloading hay for his race horses which he kept at the fairgrounds. Barrett denied that he was "bucking bales" and was subsequently fired by Asarco for allegedly lying about his physical activities while he was injured.

Barrett filed a complaint against Asarco on May 7, 1985, alleging that Asarco had breached the implied covenant of good faith and fair dealing in the employment relationship. The case was tried and the jury returned a verdict for Barrett. We reversed the judgment and remanded the case for new trial. See Barrett v. Asarco, Inc. (1988), 234 Mont. 229, 763 P.2d 27. The case was retried on November 13, 1989. The jury returned a verdict in favor of Barrett in the amount of $230,000.00 in compensatory damages. The District Court denied all of Asarco's post trial motions and entered its judgment in accordance with the verdict.

Asarco now appeals raising the aforementioned issues.

## I.

The scope of our review of a jury's verdict is narrow. Our function is to determine if there is substantial credible evidence in the record supporting the jury's verdict. Krueger v. General Motors Corp. (1989) 783 P.2d 1340, 1347, 46 St.Rep. 2114, 2122. Substantial evidence is that evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Black's Law Dictionary 1281 (5th ed. 1979); Stanhope v. Lawrence (Mont. 1990), 787 P.2d 1226, 1228-1229, 47 St.Rep. 438, 440. Although it may be based on weak and conflicting evidence, in order to rise to the level of substantial evidence it must be greater than trifling or frivolous. Christensen v. Britton (Mont. 1990), 784 P.2d 908, 913, 46 St.Rep. 2223, 2230. Where there is substantial evidence to support the jury's verdict the district court's refusal to grant a new trial will not be disturbed. Krueger, 783 P.2d at 1347; Brothers v. Town of Virginia City (1976), 171 Mont. 352, 358, 558 P.2d 464, 467.

Under the law applicable in this case, the implied covenant of good faith and fair dealing is dependent upon objective manifestations by Asarco that would give rise to Barrett's reasonable belief that he had job security and would be treated fairly. Stark v. Circle K Corp (1988), 230 Mont. 468, 475, 751 P.2d 162, 166, citing Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 282, 687 P.2d 1015, 1020. Also, as we

4

stated in our earlier remand of this case, the protection afforded Barrett by the covenant "necessarily hinges on the employee's good faith performance of job duties because the covenant of good faith and fair dealing mandates a reciprocal duty." Barrett, 763 P.2d at 32-33, citing Los Angeles Memorial Coliseum Commission v. NFL (9th Cir.1986), 791 F.2d 1356, 1361, cert. denied, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). Thus, both parties are afforded protection by the reciprocal nature of the covenant, and to rebut allegations by an employee that the employer breached the covenant the employer need only show a fair and honest reason for termination. Stark, 751 P.2d at 166-167; Flanigan v. Prudential Federal Savings and Loan Assoc. (1986), 221 Mont. 419, 426-427, 720 P.2d 257, 261.

In the case at bar, both parties presented very different versions of the events surrounding Barrett's termination. Much of Asarco's brief is devoted to arguing its version of the conflicting evidence presented in this case. However, the scope of our review mandates that we concede Barrett's evidence as true and draw all legitimate inferences in favor of Barrett. Krueger, 783 P.2d at 1347-1348; Brother's, 558 P.2d at 467. Accordingly, Barrett's evidence is sufficient to sustain a verdict that Asarco breached the implied covenant of good faith and fair dealing when it terminated his employment. Barrett presented substantial credible evidence that he had a reasonable belief in job security. He was employed by Asarco for 15 years. He had been promoted to a salaried managerial position. He received regular raises and

5

Christmas bonuses. His job involved supervising and training others, as well as responsibility for production in part of the plant. These are sufficient objective manifestations from which a jury could find the existence of the covenant.

Barrett also offered substantial credible evidence that Asarco lacked a fair and honest reason for terminating him and that Barrett did not breach his reciprocal duty of good faith. Asarco offered evidence to show that Barrett lied about his physical condition, took a fake sick leave, and slept on shift. At the termination meeting, Asarco accused Barrett of "bucking bales" while he was supposedly injured. Barrett's testimony indicates that he did not associate this accusation with unloading some hay for his horses at the fair grounds. Barrett testified that because of shift changes, and inability to adapt sleep patterns, as well as the droning, humming noise in the plant, everyone, including him, occasionally falls asleep on the night shift. Barrett denied faking a sick leave. Barrett was also accused of leaving work early in 1981 and was given 4 days off without pay. This was the only time Barrett was ever subject to discipline by Asarco. Barrett was not on probation or subject to disciplinary proceedings when he was fired. Barrett offered testimony that his immediate supervisor, Bob Hearst, had a personal dislike for Barrett and was looking for any excuse to get rid of Barrett. Hearst had Barrett's final paycheck made out prior to this termination meeting. The jury was instructed that if it found that Barrett had been dishonest with Asarco there could be no breach of

the implied covenant by Asarco. The jury as fact-finder chose to believe Barrett's version of the conflicting evidence offered at trial. It is not the function of this appellate court to overturn decisions on findings of fact made by a competent jury properly instructed on how to view the evidence. Gee v. Egbert (1984), 209 Mont. 1, 18-19, 679 P.2d 1194, 1203. Accordingly, we will not disturb the jury's determination in this case because it is supported by substantial credible evidence.

## II.

Asarco's second issue alleges that the District Court erred in admitting the transcribed testimony from the first trial of Sam Barrett, the plaintiff's brother, into evidence at the trial after remand. Asarco contends that Barrett failed to make a proper showing that his brother Sam was unavailable to testify and therefore admission of his prior testimony is reversible error. See, e.g. State v. LaCario (1974), 163 Mont. 511, 518 P.2d 982.

Rule 804 M.R.Evid. provides a hearsay exception for the use of former testimony if a witness is unavailable:

> **Rule 804. Hearsay exceptions: declarant unavailable.**
> (a) Definition of unavailability. Unavailability as a witness includes situations in which the declarant:
> . . .
> (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.
> A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.
> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> (1) Former testimony. Testimony given as a witness

> at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, (A) in civil actions and proceedings, at the instance of or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered. . . .

Citing this rule, Asarco argues that Barrett did not make reasonable efforts to procure Sam's attendance and therefore is precluded from using his prior testimony from the first trial on the grounds of unavailability.

We disagree. Generally it is within the discretion of the trial court to accept or reject counsel's representations on unavailability. Republic Security Co. v. Puerto Rico Aqueduct and Sewer Authority, (1st Cir.1982), 674 F.2d 952, 957; Bailey v. Southern Pacific Transportation Co. (5th Cir.1980), 613 F.2d 1385, 1390. In this case, foundational testimony was given by the plaintiff Barrett outside the presence of the jury regarding the unavailability of his brother to testify at this second trial. Barrett testified that he told his brother the trial date and requested that he be present to testify. His brother allegedly assured him of his presence at the trial. Barrett testified that he was simply unable to locate his brother prior to and during the trial. Barrett argues that due diligence does not require issuance of a subpoena in this case because both Barrett and Barrett's counsel believed that it would not be necessary to subpoena a family member to secure his attendance at trial.

The trial court, in its discretion, accepted this explanation. Asarco has the burden of demonstrating that the trial court erred

as to whether reasonable means were used. <u>Bailey</u>, 613 F.2d at 1390. Asarco insinuates that Sam's absence was somehow procured but fails to support such allegations with evidence. In short, Asarco has failed to meet its burden. Furthermore, Asarco experienced little or no prejudice by admission of such hearsay testimony in this, a civil proceeding because the parties and issues were identical, and Asarco had a full and fair opportunity to develop testimony from Sam Barrett on the same issues through cross-examination at the first trial. <u>See generally</u>, <u>McCormick on Evidence</u>, (3rd Ed. 1984), §§ 253-257; <u>4 Weinstein's Evidence</u>, § 804(b)(1); and commission comments to Rule 804 M.R.Evid. and Rule 804 Fed.R.Evid. The District Court did not abuse its discretion in admitting the former testimony of Sam Barrett.

## III.

Asarco also contends that the trial court erred by refusing to give Asarco's proposed instruction regarding Montana law on immediate payment of wages to discharged employees. The instruction provided:

> You are instructed that Montana statutory law requires an employer who discharges an employee for cause to immediately pay all final wages due to the discharged employee.
>
> Failure to pay all such wages due will result in a monetary penalty to the employer.

The instruction does in fact correctly state the law in Montana at the time Barrett was discharged. <u>See</u> §§ 39-3-205(2), 39-3-206, MCA (1983).

The record indicates that Asarco prepared Barrett's final

check prior to the meeting where Barrett was accused of "bucking bales" and was subsequently terminated. Barrett argues that this supports his theory that Hearst was out to get him; Barrett contends that the check was already made out because Hearst planned to fire him before Barrett had a chance to give his version of the facts.

On the other hand, Asarco argues that they merely drafted the check prior to the meeting so that they would be in compliance with the law if they decided to terminate Barrett pursuant to the meeting. They argue that this entitles them to have the jury instructed on this point.

We see little merit in Asarco's argument. After questioning Barrett about the alleged hay incident, Hearst could have decided to terminate Barrett, informed him of such, and then just as easily complied with the law by requesting him to wait a few minutes while a final paycheck was prepared for him. Therefore, both sides were at liberty to argue Hearst's intent in having the check drafted prior to ever meeting with Barrett. In refusing the instruction, the District Court noted:

> This instruction is also improper because it addresses a collateral issue in the case and not one that the jury was required to find for a verdict. It is immaterial to the jury whether the employer paid wages to the plaintiff immediately upon his discharge; termination procedure was not an issue. The defendant contends that this instruction was pertinent because evidence was presented that the employer had a termination check already made out before he determined whether cause for termination existed. <u>The proposed instruction does not address the employer's intent in this regard</u>. Giving this instruction would serve only to confuse the jury and to distract them from the issues they were required to consider. Refusal of this

instruction does not warrant a new trial. (Emphasis added.)

We agree with this analysis. The proposed instruction would have only served to confuse and mislead the jury. The District Court did not abuse it's discretion in refusing the instruction.

## IV.

Finally, Asarco contends that plaintiff's counsel engaged in misconduct warranting a new trial. It contends that Barrett's counsel violated several motions in limine, made comments evincing a lack of respect for the court's rulings and the judicial system, as well as a lack of respect for the appellate function of this Court.

Upon reviewing the record, we can find no error warranting a new trial. Asarco failed to object to the comments of Barrett's counsel alleged as misconduct except for one instance during closing argument where the objection was apparently overruled and the trial judge cured any prejudicial error by admonishing the jury that nothing said by counsel in argument was evidence. Failure to object to alleged error at trial precludes an appellant from raising that issue on appeal. Matter of B.L.O. (1984), 213 Mont. 164, 169, 689 P.2d 1246, 1249.

Asarco also failed to object to what it now alleges on this appeal are violations of the District Court's in limine rulings regarding emotional distress claims, negative publicity suffered by Barrett due to the first trial and appeal, and exclusion of due process arguments concerning termination procedure. A motion in limine is a pre-trial objection to evidence and need not be

11

continually renewed to preserve alleged errors for appeal. Beil v. Mayer (Mont. 1990), 789 P.2d 1229, 1232-1233, 47 St.Rep. 661, 665. Regardless, none of the alleged violations of these motions constitutes error sufficient to warrant a reversal by this Court in this case.

First, the District Court did not preclude in limine evidence on emotional distress, rather, the record shows that the court directed a verdict in favor of Asarco on Barrett's emotional distress claims after Barrett's case-in-chief. Any error arising from a reference to emotional distress damages by Barrett's counsel should have been preserved with an objection.

In ruling on the motion concerning damages to plaintiff growing out of a post-trial newspaper article, the trial court stated:

> On motion two, post remand problems which occurred by reason of newspaper articles brought about by publicity from the reversal by the Supreme Court, I don't think that is actionable. Even if he is distressed by the newspaper articles I don't see how that is the fault of the Defendant and so I would have been inclined to grant that. (Emphasis added.)

Asarco alleges that the following statement by Barrett's counsel violates this ruling:

> They trashed him. They ruined him. Gave him six years of agony, humiliation.

These comments make no reference to any newspaper articles, or the affect thereof, and therefore do not violate the order.

When asked by his counsel the effect the termination had on his relationship with his family Barrett did mention the newspaper article. The record contains the following testimony:

12

A. Well, I have had a hard time trying to explain to my kids some of the things they put in the newspaper.

Q. (By Barrett's counsel.) No, wait a minute. There is an order about that.

MR. RAGAIN (Counsel for Asarco): Your honor, I want the jury instructed to disregard that remark. Especially with regard to they putting [sic] in the newspaper. I want it clear that my client had nothing to do with putting anything in the newspaper.

THE COURT: The jury is instructed to please disregard that comment of the witness.

From the record it appears that Barrett's counsel did not attempt to solicit this response. Furthermore, the jury was fully admonished to disregard the answer. We will not reverse a judgment unless error affects the substantial rights of a party. Dahlin v. Holmquist (1988), 235 Mont. 17, 21, 766 P.2d 239, 241. Any prejudice suffered by Asarco here was minimal, and certainly did not rise to such a level as to deprive Asarco of a fair trial. See e.g. Krueger v. General Motors Corp., supra, 783 P.2d at 1349.

Finally, Asarco alleges that Barrett's counsel violated the motion in limine regarding due process in termination procedures during his closing argument. We disagree. In ruling on the motion, the District Court stated that evidence of the termination proceeding was inadmissible on the question of due process but would be admissible on the question of whether Asarco had a fair and honest reason for terminating Barrett. Regarding these questions, the Court stated that it would "rule on them as they come up." In closing, Barrett's counsel argued:

Now they haven't got any system in this company. Nobody ever made a memorandum of this after it was over. You

13

work for the state or any other big organization I know about and my God you would have a file on this case this thick before the guy was ever even fired. He would have hearings and have all kinds of due process and law and everything. <u>But as Your Honor instructed you they didn't have to bring a witness against him. Didn't even have to give him any notice as long as you think they had a fair and honest reason for firing him. That is the bottom line</u>. (Emphasis added.)

Here, counsel's argument went solely to the issue of whether Asarco had a fair and honest reason for terminating Barrett. No error was committed.

Furthermore, the District Court has discretion in determining whether misconduct so prejudices a party as to warrant reversal:

> The standard of review for this Court in determining whether a mistrial was appropriately denied is whether there is manifest abuse of the District Court's broad discretionary power. [citations omitted].
> . . . . The District Court judge . . . is in the best position to determine the prejudicial effect of the attorney's blatant misconduct on the jury.

Kuhnke v. Fisher (1987) 227 Mont. 62, 68, 740 P.2d 625, 628. (<u>Kuhnke II</u>.) Here, we cannot conclude that the District Court abused its discretion. The judgment is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

14

William E Hunter

Daniel T. Barry

_____

Justices

15