No. 90-614

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

GARY O. KITTELSON,

          Plaintiff and Appellant,

  -vs-

ARCHIE COCHRANE MOTORS, INC.,

          Defendants and Respondents.

FILED

JUN - 6 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Gregory P. Johnson, Billings, Montana
          Jock B. West; West Law Firm, Billings, Montana

      For Respondent:

          Don M. Hayes; Herndon, Hartman, Sweeney & Halvorson,
          Billings, Montana

Submitted on Briefs:  April 18, 1991

Decided:  June 6, 1991

Filed:

_____
          Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Gary O. Kittelson appeals from summary judgment granted on September 28, 1990, by the District Court of the Thirteenth Judicial District, Yellowstone County, Montana, in favor of Archie Cochrane Motors, Inc. Kittelson claimed that by refusing to disburse severance pay, Archie Cochrane Motors was negligent and had breached the employment contract and the implied covenant of good faith and fair dealing. We affirm.

The issue is whether the District Court erred in determining that no genuine issues of material fact exist and improperly granted summary judgment.

### Summary of Facts

Gary O. Kittelson was fired on August 11, 1986, after having been employed by Archie Cochrane Motors (ACM) for seventeen years, working his way up from salesperson in 1968 or 1969 to General Sales Manager in 1979. When he was promoted to General Sales Manager on July 1, 1979, Kittelson signed an employment contract which provided that he receive a salary of $1,700 per month plus two per cent of the company's operating profits, as well as a year-end bonus of two per cent of the company's operating profits. The contract did not refer to a definite time period of employment. Kittelson's base salary increased over the years, and although his profit percentage remained the same, he was making over $50,000 a year as General Sales Manager during the last few years of employment.

When Kittelson began working for ACM, the company was owned by Archie Cochrane, who sold ACM in January 1974 to James and Dave McNally. After McNallys bought the car dealership, an employee handbook was distributed to all ACM employees. The handbook did not state procedures or policies for discharging employees except for a section providing that severance pay would be decided on a case by case basis, but would not be given if the employee had engaged in "improper conduct."

According to James McNally, the President of ACM, Kittelson's performance began to decline in late 1984. On January 27, 1986, McNally wrote Kittelson a letter, constituting "a formal and final warning on the problems you and I have been discussing over the past ninety days." The letter listed Kittelson's shortcomings in "inventory management" and "people management."

Kittelson told McNally in June 1986 that he felt his performance had improved. McNally disagreed and demoted Kittelson to truck manager, temporarily taking over as General Sales Manager himself. McNally said that because he and Kittelson were friends, he switched Kittelson's position rather than terminating his employment, to "jar" him back to "functioning like he used to." According to McNally, Kittelson's performance continued to decline, leading to his termination in August 1986.

Following his termination, Kittelson approached Jim McNally about the possibility of obtaining severance pay. McNally instructed Kittelson to write down the reasons that he felt entitled to severance pay, and assured Kittelson that he would

3

present the matter to the Board of Directors. According to Kittelson, McNally also commented that if anyone deserved severance pay, Kittelson did. The Board rejected Kittelson's request for severance pay.

McNally stated that approximately a year later, Kittelson told him that he needed a letter of recommendation because of difficulty in finding employment. Against his attorney's advice, McNally wrote the letter and backdated it to the time Kittelson's employment was terminated. McNally said that he did this because "I was trying to help him out."

Before Kittelson's termination, ACM had never given an employee severance pay. Subsequent to Kittelson's discharge, two ACM employees received severance pay after termination of their employment.

Kittelson filed this action against ACM alleging negligent discharge, negligent infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, and breach of contract for failing to provide severance pay.

I

Before discussing the issues concerning Kittelson's termination, we must address the preliminary question of whether the Montana Wrongful Discharge From Employment Act, §§ 39-2-901 to -914, MCA, applies to this case. Since Kittelson was discharged in August 1986, this action is not controlled by the Montana Wrongful Discharge From Employment Act, which took effect July 1, 1987.

4

We now turn to Kittelson's claim that the District Court erred in granting summary judgment to ACM because genuine issues of material fact existed. Summary judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; First Security Bank of Bozeman v. Jones (1990), 243 Mont. 301, 303, 794 P.2d 679, 681. Initially, the moving party must allege the absence of genuine factual issues. To prevail, the nonmoving party must set forth facts demonstrating that a genuine issue exists. O'Bagy v. First Interstate Bank of Missoula (1990), 241 Mont. 44, 46, 785 P.2d 190, 191.

Kittelson argues that the following material facts were at issue: (1) whether Kittelson was entitled to severance according to provisions of the employee handbook; (2) whether ACM terminated Kittelson's employment "for an act of improper conduct;" (3) whether McNally's statements to Kittelson in regard to his request for severance pay imposed obligations on ACM; and (4) whether the question of Kittelson's severance pay was presented to the Board by Jim McNally. Examination of the record reveals that no genuine issues of material fact existed.

In Montana, employment "having no specified term may be terminated at the will of either party on notice to the other . . . ." Section 39-2-503, MCA. In asserting claims of wrongful discharge, Kittelson relied on the exceptions to "at will" termination of employment listed in Prout v. Sears, Roebuck and Co. (1989), 236 Mont. 152, 157, 772 P.2d 288, 291. Aside from

5

statutory exceptions, Prout lists four exceptions to "at will" termination of employment: (1) violation of public policy; (2) breach of express or implied promise of job security; (3) breach of the implied covenant of good faith and fair dealing; and (4) negligent discharge. As noted in Prout and as our discussion will demonstrate, these exceptions frequently overlap. Prout, 236 Mont. at 157, 772 P.2d at 291.

## Negligent Discharge

In a recent decision, we held that an employer is not under a "duty to use reasonable care in decision making, based upon a theory of negligence." Heltborg v. Modern Machinery (Mont. 1990), 795 P.2d 954, 961, 47 St.Rep. 1254, 1264. Therefore, negligent discharge is no longer a recognized exception to termination of employment "at will," and we need not further review Kittelson's claim that he was negligently discharged.

## Violation of Public Policy

In cases not controlled by the Montana Wrongful Discharge of Employment Act, a plaintiff must show a violation of public policy by his employer in order to establish that he has been wrongfully discharged. Rupnow v. City of Polson (1988), 234 Mont. 66, 70, 761 P.2d 802, 804. Administrative rules promulgated by state agencies are one source of public policy, and an employer's violation of administrative rules in terminating an employee may constitute wrongful discharge. Nye v. Department of Livestock (1982), 196 Mont. 222, 639 P.2d 498. Termination of an employee for refusing to participate in illegal or immoral activities also violates

6

public policy. Stark v. Circle K Corporation (1988), 230 Mont. 468, 475-76, 751 P.2d 162, 167 (employee discharged for refusing to sign false report).

Kittelson does not claim these types of public policy violations. Instead, he alleges that ACM violated public policy by breaching the implied covenant of good faith and fair dealing. Since the covenant is "implied as a matter of law based on the public policy of this State," breach of the covenant amounts to a violation of public policy. Stark, 230 Mont. at 475, 751 P.2d at 166. Thus, we must determine whether any genuine issue of material fact exists to demonstrate breach of the implied covenant of good faith and fair dealing.

### Implied Covenant of Good Faith and Fair Dealing

Montana has long recognized the implied covenant of good faith and fair dealing in employment contracts. Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015; Gates v. Life of Montana Insurance Co. (1982), 196 Mont. 178, 638 P.2d 1063. Whether an implied covenant of good faith and fair dealing exists in an "at will" employment context depends upon objective manifestations by the employer that would give rise to the employee's reasonable belief that he had job security and would be treated fairly. Barrett v. Asarco, Inc. (Mont. 1990), 799 P.2d 1078, 1081, 47 St.Rep. 1980, 1982. Both parties are protected by the reciprocal nature of the covenant, which imposes on the employee an obligation of good faith performance of his job duties. Barrett, 799 P.2d at 1081, 47 St.Rep. at 1082.

7

Kittelson had worked for ACM for seventeen years and for McNallys since they bought ACM in 1974. In 1979, ACM promoted Kittelson to General Sales Manager, a managerial position which required Kittelson to supervise the other sales managers and salespersons. Kittelson received base salary increases and a percentage of profits over his base salary, as well as a year-end bonus. These facts could give rise to a reasonable belief that Kittelson had job security. See Barrett, 799 P.2d at 1081, 47 St.Rep. at 1982 (receiving regular raises and bonuses in salaried, managerial position for fifteen years were sufficient objective manifestations of existence of covenant).

The implied covenant of good faith and fair dealing requires "'honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade'" by both parties. Story v. City of Bozeman (1990), 242 Mont. 436, 450, 791 P.2d 767, 775 (quoting § 28-1-211, MCA). "[T]o rebut allegations by an employee that the employer breached the covenant, the employer need only show a fair and honest reason for termination." Barrett, 799 P.2d at 1081, 47 St.Rep. at 1982.

Kittelson's primary contention is that ACM's refusal to disburse severance pay was unfair and contrary to the policy stated in ACM's employee handbook:

> G. Separation for Cause. If you are separated for cause, whether or not you are given severance pay depends upon the reason you were leaving our organization, and each case will be handled individually. Severance pay will not be given, however, for separation because of an act of improper conduct.

No other portions of the handbook commented on procedures for

8

discharge of employees. Kittelson maintains that he was entitled to severance pay because he was not terminated for "an act of improper conduct," precluding severance pay according to the handbook.

An employee handbook distributed after the employee was hired is not an employment contract because the handbook constitutes a unilateral statement of company policies and procedures, because its terms are not bargained for, and because no meeting of the minds occurred. Gates, 196 Mont. at 183, 638 P.2d at 1066. Nevertheless, an employer can breach the implied covenant of good faith and fair dealing by failing to follow its own policies as set forth in the employee handbook. Gates, 196 Mont. at 184, 638 P.2d at 1067.

On January 27, 1986, Jim McNally wrote Kittelson a letter comprising "a formal and final warning on the problems you and I have been discussing over the past ninety days." The letter cataloged "short-comings as to inventory management that we discussed" and "short-comings as to people management that we have discussed," listing three items in each category, and informed Kittelson that he had to improve his performance by June 1, 1986.

About a year after Kittelson's employment was terminated, McNally, at Kittelson's request, wrote a letter of recommendation, addressed "To Whom It May Concern," citing Kittelson's "loyalty and honesty" and "abilities as a Sales Manager." The letter, backdated to August 22, 1986, also stated:

> About two years ago, Gary and I started differing on
> management methods. As these differences grew it became

apparent we would be better served if Gary were to seek employment with a firm whose philosophies were more in line with his thoughts.

Kittelson maintains that this letter raises a question of fact regarding the reasons for his termination. Kittelson further argues that the letter of recommendation shows that he was not terminated for "an act of improper conduct," and thus was not precluded from receiving severance pay by the provisions of the employee handbook.

The January 27, 1986, letter demonstrates that Kittelson's performance was lacking. In June 1986, Kittelson was demoted to truck sales manager and given a final warning. The letter of recommendation, written approximately a year after Kittelson was terminated in August 1986, cannot be characterized as giving Kittelson the reasons for ending his employment. The letter was written at Kittelson's request for the purpose of helping him obtain other employment.

However, we need not decide whether Kittelson was discharged for "an act of improper conduct." The language of the employee handbook clearly states that "each case will be handled individually" in deciding whether severance pay is given.

At some time shortly after he received notice of termination, Kittelson approached McNally about receiving severance pay. McNally told Kittelson that he would bring the matter before the Board of Directors of ACM and suggested to Kittelson that he record the reasons which entitled him to severance pay. Kittelson sent his written reasons for receiving severance pay to the other two

10

Board members. Kittelson contends that a factual dispute remains over whether McNally presented the matter of Kittelson's severance pay to the Board of Directors as he had described to Kittelson. Kittelson also emphasizes that McNally said to him, "If anyone has severance pay coming, you do."

Kittelson's reasoning fails because the employee handbook does not outline the procedures ACM must take to reach a decision regarding severance pay. As stated by the District Court, "[t]he contents of the employment handbook paragraph regarding such pay, the content of the conversation between McNally and Kittelson, and the result of the Board's determination regarding the severance pay are not at issue."

McNally stated in his deposition that because ACM had continued to employ Kittelson for some time after his performance declined, he and the Board "felt that we had paid Mr. Kittelson probably a year's salary that was unearned." The actions of the ACM Board of Directors, however the Board may have arrived at the decision and for whatever reasons, comply with ACM policy to handle each case individually as stated in the employee handbook. McNally's statement that Kittelson had severance pay coming if anyone did is neither a promise to Kittelson that he would receive severance pay nor a representation to Kittelson that the Board decision would be in Kittelson's favor. The District Court did not err in concluding that genuine issues of material fact did not exist and that ACM did not breach the implied covenant of good faith and fair dealing by denying severance pay to Kittelson.

11

We briefly discuss Kittelson's last two claims. Kittelson does not have a breach of contract claim based on the employee handbook because, as noted in the above discussion, an employee handbook is not an employment contract. <u>Gates</u>, 196 Mont. at 183, 638 P.2d at 1066. Finally, we note that Kittelson's claim of negligent infliction of emotional distress is without basis.

Affirmed.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_R. C. McDonough_

_Justices_

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority's decision, but not with all that is said therein.

The plaintiff has alleged five causes of action. However, all causes are based on plaintiff's assumption that he was entitled to severance pay which his employer wrongfully refused to give him.

Plaintiff's assumption that he was entitled to severance pay was based on the following provision found in his employer's Employee Handbook:

> If you are separated for cause, whether or not you are given severance pay depends upon the reason you are leaving our organization, and each case will be handled individually. Severance pay will not be given, however, for separation because of an act of improper conduct.

Plaintiff contends that it is reasonable to interpret the above provision as, "the assurance that an employee terminated for cause, other than an act of improper conduct, is entitled to and will receive benefits from Respondent."

Plaintiff's proffered interpretation is not reasonable. All that is guaranteed by the Employee Handbook is that each case will be handled individually and that consideration will be given to the circumstances of an employee's departure. That is what the employer did in this case, and therefore, there was no employment policy violation which could form the basis for any of the plaintiff's five causes of action.

For this reason, I would affirm the judgment of the District Court, even though I do not concur with all that is said in the majority opinion.

_____
Justice

I concur in the foregoing concurring opinion of Justice Trieweiler.

_____
Justice

14