NO.   94-271

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF THE TERMINATION
OF WAYNE ABBEY,

          Petitioner and Appellant,

     -v-

CITY OF BILLINGS POLICE COMMISSION,
CITY OF BILLINGS, MONTANA, and BRUCE
McCANDLESS, Acting City Administrator,

          Respondents and Respondents.

FILED

DEC 15 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Maurice R. Colberg, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

          Carter N. Picotte, Helena, Montana

          For Respondents:

          James L.  Tillotson,  Billings  City  Attorney,
          Billings, Montana


                         Submitted on Briefs:  October 5, 1994

                                    Decided:  December 15, 1994

Filed:

_____
                    Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a review by the Thirteenth Judicial District Court, Yellowstone County, of a decision by the Billings City Police Commission and subsequent modification of that decision by the City Administrator. We affirm.

We consider the following issues on appeal:

I. Did the District Court err in affirming the Billings City Police Commission's denial of Abbey's Prehearing Motion to Dismiss?

II. Did the District Court err in holding that the expert testimony of Officer John Carpani and Captain Douglas Dreezen regarding the accident was proper and that any opinion testimony from Larry Deschene and Cliff Fillner was harmless error?

III. Did the District Court err in upholding the Billings Police Commission's denial of Abbey's motion for a ruling of "Not Proven" following the City's case-in-chief?

IV. Did the District Court err in upholding the Billings Police Commission's finding that there was substantial evidence to show that Abbey was guilty of the alleged misconduct?

V. Did the District Court err in affirming the Acting City Administrator's decision to modify Abbey's punishment?

Wayne Abbey (Abbey) was a Billings City Policeman. Abbey was assigned Car #1421 for his regular shift beginning in the evening of March 24, 1992. Something happened to severely damage the car either before or during Abbey's shift. Abbey claimed the damage was done to the car before he began his shift and while the car was parked in the city parking complex. Abbey did not report the damage immediately upon beginning his shift. He claims that he believed that the car had been damaged by someone prior to his shift and that that person had already reported the damage.

Abbey claims that he continued his shift, putting a piece of

2

side molding trim that had been knocked loose from the car in the back seat and later throwing it out in a dumpster on Minnesota Avenue. Much evidence was presented at Abbey's hearing that showed that the accident actually happened at a railroad switch close to this dumpster during Abbey's work shift.

The Police Department charged Abbey with four counts of violating various Billings Police Department directives such as: neglect of duty, misconduct in his office, conduct unbecoming a police officer, guilt of a crime and/or conduct such as to bring reproach upon the police force. Abbey moved to dismiss the charges against him during a prehearing conference. The motion was denied. Pursuant to § 7-32-4151, et seq., MCA, a hearing was held before the Police Commission on September 2 and 3, 1992.

The Commission found that substantial evidence existed to support all four counts charged against Officer Abbey and suspended Abbey for three weeks. The Acting Billings City Administrator, Bruce McCandless, agreed with the Commission's findings and conclusions and pursuant to § 7-32-4160(2) and (3), MCA (1991), modified Abbey's punishment from suspension to termination.

Abbey appealed the Commission's decision and the modification of his punishment to the Thirteenth Judicial District Court, Yellowstone County. Abbey appeals the District Court order dated April 21, 1994, affirming the Commission.

�⊥

    Did the District Court err in affirming the Billings
    City Police Commission's denial of Abbey's Prehearing
    Motion to Dismiss?

3

Abbey maintains that he was prejudiced before the hearing began. The prejudice was caused by the inclusion with the complaint of various documents including a City of Billings investigative police report and the results of a polygraph test conducted on a fellow officer who shared Abbey's police car, #1421. Abbey argues that he was prejudiced by the Police Commission having seen the erroneously admitted polygraph test. Abbey argues that the Commission did not follow the rules of evidence and that such a departure caused him a lack of due process.

The City of Billings argues that the investigative report to which Abbey objects was a Billings Police Department Internal Affairs Summary dated May 19, 1992. The report contained a summary of the evidence against Abbey, including reference to the polygraph test. Captain Douglas Dreezen (Captain Dreezen) who had recovered the side trim from car #1421 wrote the report. Captain Dreezen also testified to the actual site of the accident. According to the City of Billings, this report was neither admitted into evidence nor was it considered by the Police Commission.

The District Court must review the findings of a police commission as to whether the commission findings are supported by substantial evidence. Gentry v. City of Helena (1989), 237 Mont. 353, 773 P.2d 309. When the decision on review by a district court of proceedings before a police commission is conducted under § 7-32-4164, MCA, and the district court decision is appealed to us, we adopt the standard of review set forth in the Montana Administrative Procedure Act, § 2-4-704(2)(a), MCA. Termination of

4

Wong (1992), 252 Mont. 111, 827 P.2d 90.

Here, Abbey has claimed that he was prejudiced because his due process rights were violated by the Commission's refusal to grant a dismissal due to having seen improper evidence. Therefore, we will review the Commission's decision as to whether the Commission was in "violation of constitutional or statutory provisions" and whether the Commission's refusal to dismiss was "arbitrary or capricious or characterized by abuse of discretion." Section 2-4-704(2)(a)(i) and (vi), MCA.

The District Court found that Abbey was not prejudiced by the Commission's having seen the objectionable documents. The court stated that many times a court acting as a finder of fact has to determine whether evidence can be admitted. Here, the Commission determined that it would not consider the results of the polygraph test nor permit the officer involved to testify. The Commission determined that such prohibition would prevent prejudice to Abbey.

In evaluating Abbey's due process rights, we note that firefighters have a property interest in their position because of the civil service nature of their employment. Welsh v. City of Great Falls, (1984), 212 Mont. 403, 690 P.2d 406. We alluded to the same property interest held by police officers. Termination of Wong (1992), 252 Mont. at 118-19, 827 P.2d at 95. In Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 542, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494, 504, the United States Supreme Court held that notice and an opportunity to respond to the charges constitutes the process due an employee with a property interest in

5

his employment.

The Police Commission provided Abbey his due process rights. The Commission provided notice and a hearing at which Abbey was adequately represented by counsel. Abbey's contention that strict adherence to the rules of evidence is the minimum process due him has no foundation in the law. Nor is there any indication here that the rules of evidence have been ignored or applied incorrectly.

Further, Abbey has not demonstrated prejudice from the Commission's refusal to dismiss his action following the Commission's perusal of objectionable papers. The Commission correctly cited Montana's law concerning polygraph results, and refused to consider such results or permit testimony of the officer in question. The Commission did not act arbitrarily in its refusal to dismiss because the Commission considered the appropriate law and specifically refused to accept into evidence the results of the polygraph test and the summary of evidence against Abbey. Abbey was provided proper hearing and no action by the Commission prejudiced Abbey's ability to be heard.

We conclude the Commission did not abuse its discretion by acting arbitrarily when it refused to dismiss the action because of the questionable documents.

We hold the District Court did not err in affirming the Billings City Police Commission's denial of Abbey's Prehearing Motion to Dismiss.

Did the District Court err in holding that the expert testimony of Officer John Carpani and Captain Douglas Dreezen regarding the accident was proper and that any opinion testimony from Larry Deschene and Cliff Fillner was harmless error?

At the Commission hearing Officer Carpani, Captain Dreezen, and Motor Pool Manager Larry Deschene (Deschene) and City of Billings Purchasing Agent Cliff Fillner (Fillner) testified concerning technical information and certain opinions as to the possible place of damage to car #1421.

On review of the Commission proceedings, the District Court determined that Deschene and Fillner were not expert witnesses in accident reconstruction and, therefore, they should not have testified concerning their opinions as to what actually happened to police car #1421. However, the court determined that this was harmless error. The court also determined that Officer Carpani and Captain Dreezen had been sufficiently qualified to testify as expert witnesses.

Abbey argues that it was not harmless error to allow Fillner and Deschene to testify concerning their opinions of the accident. Abbey further contends that Officer Carpani and Captain Dreezen are not experts in accident reconstruction. The City of Billings argues that both Officer Carpani and Captain Dreezen investigated many vehicular accidents. According to the City of Billings, Officer Carpani had special training in accident reconstruction. The City of Billings also contends that the opinion testimony of Deschene and Fillner should not have been permitted by the

Commission but that its inclusion did not prejudice Abbey.

### A.    Expert Testimony

An expert witness is one who is able to provide understanding that is beyond the jury's experience.  Mason v. Ditzel (1992), 255 Mont. 364, 842 P.2d 707.  The District Court had to determine whether the Commission made an "error of law" in permitting the opinions of Captain Dreezen, Officer Carpani as well as Deschene and his assistant Fillner.  Section 2-4-704(2)(a)(iv), MCA. We will use the same standard when reviewing the District Court.

Officer Carpani testified that he had investigated many vehicular accidents in his years on the police force.  In addition, Officer Carpani testified that he had attended a two week school at Northwest University for the purpose of studying accident reconstruction.  Officer Carpani also testified that part of his job with the police force involved investigating serious accidents.

There is no question that Officer Carpani was qualified as an expert in accident reconstruction.  He has special knowledge in accident reconstruction gained at a reputable University and has used that knowledge in his employment with the City of Billings. He was qualified as an expert and his opinions as to the site and cause of the accident were appropriate.  The District Court did not err in finding Officer Carpani qualified as an expert.

Captain Dreezen is the Captain of Operations Division; his job responsibilities include internal affairs investigations of his officers.   He testified that part of his job duties involved

8

investigations into police vehicle damages. The present action is an outgrowth of his internal investigation concerning the damage to Abbey's car. Captain Dreezen testified that he had investigated many vehicular accidents in his years on the force. In a prior case we determined that a policeman with 14 years experience was properly permitted to testify to the cause of an accident. Hart-Anderson v. Hauck (1989), 239 Mont. 444, 781 P.2d 1116. Although the record does not tell us the number of years Captain Dreezen has spent on the police force, his testimony clearly evinced years of investigation into vehicle damage and his familiarity with investigation of vehicular accidents in general:

> A. . . .Two vehicles strike each other, it knocks debris, dirt, mud, whatever from underneath the fender wells, and ends up on the street or the pavement or whatever.
>
> Q. In your experience, does that happen when a car is merely parked in a spot with no collision?
>
> A. With no collision?
>
> Q. No impact.
>
> A. No.

Captain Dreezen went on to testify that the parking spot in which Abbey claimed to have found the damaged car, had none of those things. The parking spot was clean when Captain Dreezen inspected it. Captain Dreezen subsequently investigated the dumpster where Abbey said that he had thrown the piece of strip molding trim that had been loose on the car.

Captain Dreezen testified that he also investigated the area around the dumpster because he did not feel that the damage had occurred as reported by Abbey. Captain Dreezen testified at length

about where he felt the real site of the damage occurred. The City introduced pictures of the railroad switch which allegedly did the damage and also pictures of the switch in relation to the damage on the car. Captain Dreezen testified to the white paint on the switch and the white paint chips found at the base of the switch. Car #1421 is white. Further Captain Dreezen testified that the black substance found on car #1421 was the same substance that existed on the switch itself.

Captain Dreezen supported every detail of his testimony by logical analyses from his experience and reasons for his assumptions concerning the damage and the site of the damage. The only piece of unsupported speculation in Captain Dreezen's testimony was objected to by Abbey's counsel and sustained by the Commission.

We conclude that the District Court did not err in determining that Captain Dreezen and Officer Carpani were sufficiently qualified as expert witnesses and could, therefore, give their opinions concerning the possible sources of damage to car #1421.

B. Lay Opinions

Abbey objects to the following opinions in the testimony of Deschene and Fillner:

Deschene: And to me it didn't look like -- it looked highly unlikely that the damage could have happened in that spot.

Deschene: There was damage underneath the fender part on the bottom part of the vehicle that appeared that the car was hit on the bottom, or ran over something.

Fillner: The direction of the scrape appeared to me that the car had been moving backwards.

10

The Commission allowed this testimony over Abbey's counsel's objection. Both parties in this case recognize that the above testimony is improper lay witness testimony. The District Court concluded that the testimony should not have been permitted. The court determined that the inclusion of these opinions from lay witnesses was harmless error.

Abbey argues that the cumulative effect of the lay testimony prejudiced him. The City of Billings argues that the lay witnesses merely testified to facts already in evidence.

Harmless error is an error committed during the trial proceedings which does not affect the substantial rights of the party. Barrett v. Asarco Inc. (1990), 245 Mont. 196, 799 P.2d 1078. Thus, in order for the District Court to reverse the Commission, Abbey had to show that Deschene's and Fillner's testimony violated his substantial rights. We conclude that he has not shown that.

The majority of Deschene's and Fillner's testimony constituted their observations of the parking space occupied by car #1421 as well as their observations of the car itself. Personal observations by lay witnesses are admissible in evidence. The objectionable opinions, although not properly permitted by the Commission, are no more than repetitions of the much more detailed testimony of the police experts, Captain Dreezen and Officer Carpani. Because the opinions of Deschene and Fillner added nothing new and controversial to the hearing, and Abbey has not shown that the testimony affected his substantial rights, we

11

conclude that the opinions offered by Deschene and Fillner were harmless error.

Therefore, we hold that the District Court did not err in determining that the opinions erroneously admitted during the Commission proceedings from Deschene and Fillner were merely harmless error.

III.

Did the District Court err in upholding the Billings Police Commission's denial of Abbey's motion for a ruling of "Not Proven" following the City's case-in-chief?

At the end of the City of Billing's case-in-chief, Abbey's attorney petitioned the court to make a finding of "not-proven" concerning all four counts of the charges against Abbey. This motion is the same as a directed verdict. A directed verdict is properly granted when it appears as a matter of law that the nonmoving party could not recover upon any view of the evidence. Nautilus Ins., Inc. v. First National Ins., Inc. (1992), 254 Mont. 296, 837 P.2d 409.

The Commission determined that enough evidence had been presented to it to require continuation of the hearing. When reviewing denial of motion for directed verdict, only substantial evidence in the record supporting the jury's [trier of fact's] finding is required. Nelson v. Flathead Valley Transit (1992), 251 Mont. 269, 824 P.2d 263. Also in reviewing a denial of a motion for directed verdict, we must take the plaintiff's evidence as presented to be true. Krueger v. General Motors Corp. (1989), 240 Mont. 266, 783 P.2d 1340. Here, when accepting the City's evidence

12

as true, the District Court was correct in determining that substantial evidence existed to continue the hearing.

Two experts testified that the accident could not have happened where Abbey found the car at the beginning of his shift. Further, the City introduced evidence in the form of photographs that showed a direct match between the damage to the car and the railway switch that Captain Dreezen determined had been the cause of damage to car #1421. Both the Motor Pool Manager and Purchasing Agent testified that they observed no evidence of an accident at the spot that Abbey claimed he found the car already damaged. This evidence constitutes enough evidence to warrant a continuation of the hearing.

We conclude that the District Court did not err in upholding the Billings Police Commission's denial of Abbey's motion for a ruling of "Not Proven" following the City's case-in-chief.

IV.

Did the District Court err in upholding the Billings Police Commission's finding that there was substantial evidence to show that Abbey was guilty of the alleged misconduct?

Abbey argues that the City had no evidence for their case except for inadmissible hearsay and conjecture. Abbey claims that the only appropriate evidence at the hearing came from his own two eye-witnesses who testified that the damage had been done to the car before the time Abbey testified he became responsible for the car. The City of Billings argues that the record presents overwhelming evidence that Abbey was not telling the truth about the damage to car #1421.

13

The Commission was required to use the substantial evidence standard of proof. Gentry, 237 Mont. at 358, 773 P.2d at 312-13. "Substantial evidence is that evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Barrett, 245 Mont. at 200, 799 P.2d at 1080.

The Commission issued the following findings:

1. Police Car #1421 was damaged by being backed into a railroad switching device located on Montana Rail Link right-of-way near Minnesota Avenue and South 27th Street.

2. The damage occurred sometime between 9:00 p.m. on March 24, 1992, and 3:00 a.m. on March 25, 1992. The vehicle strip molding located in a dumpster near Minnesota Avenue and South 23rd Street came from police car #1421.

3. Officer Abbey placed the strip molding from police car #1421 in the dumpster.

4. Officer Wayne Abbey was driving car #1421 at the time it was damaged. He did not disclose essential information concerning that damage, including his knowledge of where the accident occurred. Officer Abbey did not report the accident when the accident occurred, nor did he remain at the scene of the accident.

5. Officer Abbey's written supplement concerning the damage to police car #1421 was inaccurate and misleading.

The District Court in reviewing these findings used the substantial evidence test. Gentry, 237 Mont. at 358, 773 P.2d at 312-13. The court found substantial evidence to support the Commission's findings. In reviewing the record, we conclude that substantial evidence exists to uphold the court's findings.

The record shows overwhelming physical evidence that the damage could not have happened in the parking spot where Abbey first took responsibility for car #1421. Both testimony and

14

physical evidence showed that it occurred at the railroad switch near the dumpster where Abbey deposited the car trim. Further, there is no question that Abbey did not report the accident when it happened but waited until approximately five hours into his shift to inform the police department of the damage. Even if one assumes the truthfulness of Abbey's claims that the damage was waiting for him at the beginning of his shift, the fact remains that he did nothing to report the damage as required by police regulations.

A number of witnesses testified that the parking spot in which the car was located showed no signs of any accident having occurred there. The only person to have noticed anything about the parking spot was Abbey as reported in his accident report. He claims that he found physical evidence of the damage having been done there, but this evidence was never presented at trial nor corroborated by any of the other witnesses. The only physical evidence presented showed that the accident occurred in a railroad yard.

Abbey argues that he had two eye-witnesses that testified that the damage happened before he took responsibility for his car on the evening of March 24, 1992. The record shows that the testimony of three officers was presented concerning the damaged car. None of these witnesses were "eye-witnesses." Their testimony was contradictory and equivocal.

We conclude that the record contains substantial evidence that the City's charges against Abbey were correct and that the court was not in error in upholding the Commission's decision.

15

Did the District Court err in affirming the Acting City Administrator's decision to modify Abbey's punishment?

In an order dated October 2, 1992, the Acting City Administrator, Bruce McCandless (McCandless) confirmed the Police Commission ruling and modified the three-week suspension that the Commission had levied. McCandless stated that Abbey had violated the trust of the citizens of Billings by submitting an untruthful report. He, therefore, terminated Abbey from the police force.

Abbey argues that the City Administrator acted beyond his authority. The City of Billings argues that the City Administrator has the jurisdiction to modify the decision of the Police Commission.

In reviewing the actions of the City Administrator, the District Court concluded that the City Administrator had not exceeded his authority pursuant to § 7-32-4160, MCA, when he modified the ruling of the Police Commission.

The law in effect at the **time** of the hearing before the Commission was the 1991 version of our codes. Section 7-32-4160, MCA (1991), reads:

> Decision by police commission -- veto power of mayor.
> (1) The police commission must, after the conclusion of the hearing or trial, decide whether the charge was proven or not proven and shall have the power, by a decision of a majority of the commission, to discipline, suspend, remove, or discharge any officer who shall have been found guilty of the charge filed against him.
> (2) Such action of the police commission shall, however, be subject to modification or veto by the mayor, made in writing and giving reasons therefor, which shall become a permanent record of the police commission; provided, however, that where and when the police commission

16

decides the charge not proven, the decision is final and conclusive and is not subject to modification or veto by the mayor or to any review.

(3)  Where the police commission decides the charge proven, the mayor, within 5 days from the date of the filing of such findings and decision with the city clerk, may modify or veto such findings and decision. (Emphasis added.)

Section 7-32-4153, MCA (1991), describes a mayor as a:

. . . "city manager", "city commissioner", or any other name or designation used to identify or designate the chief executive of any city or municipality.

It is clear from the wording of this statute that McCandless did not exceed his authority by modifying Abbey's punishment. The record shows that McCandless filed his modification within the time limit permitted by the statute.

This Court upheld the plain meaning of this statute. In Gentry, 237 Mont. at 362-63, 773 P.2d at 315, the Police Commission recommended that three officers receive only temporary suspensions. The City Manager modified the ruling terminating all officers and we upheld that action.

However, we note that the 1993 Legislature has deleted subsection (2) and (3) of § 7-32-4160. 1993 Mont. Laws 1661. That statute now reads:

Decision by police commission. The police commission shall, after the conclusion of the hearing, decide the appeal and must have the power, by a decision of a majority of the commission, to sustain, modify, or overrule the disciplinary order of the mayor, city manager, or chief executive.

This is a drastic departure from the 1991 version.

We conclude that pursuant to the 1991 version of § 7-32-4160, MCA, the City Administrator had the authority to modify the

17

decision of the Police Commission.  We hold the District Court did not err in affirming the Acting City Administrator's decision to modify Abbey's punishment.

Affirmed.

_____
Justice

We Concur:

_____
John Conway Harrison

_____

_____

_____
Justices