No. 89-157

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

RAY T. SPERRY,

        Plaintiff and Appellant,

  -vs-

MONTANA STATE UNIVERSITY,

        Defendant and Respondent.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lineberger & Harris; Douglas D. Harris, Bozeman,
        Montana

    For Respondent:

        Dorothy L. Brownlow; Moore, O'Connell, Refling and
        Moon, Bozeman, Montana

Submitted on Briefs:  Aug. 3, 1989

Decided:  August 30, 1989

Filed:

_____
            Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The plaintiff, Ray V. Sperry, brought this action to recover "conversion compensation" allegedly due him as a result of a contract conversion that took place in 1967 at Montana State University. After a bench trial, the District Court for the Eighteenth Judicial District, Gallatin County, entered judgment for Montana State University. From this judgment, Mr. Sperry appeals. We affirm.

The issues are:

1. Did the District Court err in concluding that the retirement agreement entered into between MSU and Mr. Sperry constituted a complete waiver and release of all claims he is now asserting?

2. Is Mr. Sperry's claim barred by the doctrine of laches?

Mr. Sperry was employed at Montana State University (MSU) from 1965 through March 31, 1986, retiring as Director of Continuing Education. At the commencement of his employment with MSU, and for the next two years, the terms of a written contract known as the "Montana 12 Contract" governed his employment. The Montana 12 Contracts allowed employees to take an eighth quarter leave with pay for research, travel or any other reason approved by the Board of Regents. Employees were required to work seven quarters before eligibility for eighth quarter leave accrued. They were also allowed to accumulate two quarters, a total of six months.

In 1967, the Board of Regents ordered MSU to terminate the Montana 12 Contract and convert to a one-year contract. Mr. Sperry's contract was converted to a fiscal year contract. At that time his annual salary was increased by $1000, from $7800 to $8800, which constituted a 13% increase in pay. Mr. Sperry signed an agreement acknowledging and

2

accepting the change from a Montana 12 Contract to a fiscal contract which stated that "all accumulated eighth quarter leave" had been taken, and he waived claim to any future eighth quarter leave.

From 1967 until retirement in 1986, Mr. Sperry signed nineteen individual annual employment contracts with MSU, all of which stated the term of the employment and the agreed salary for that year. None of these contracts mentioned any conversion compensation due. Conversion compensation arose from the replacement of Montana 12 Contracts with the annual contracts as compensation for the additional time worked without leave. Mr. Sperry now contends he reached an oral agreement with MSU entitling him to conversion compensation amounting to an additional 10% increase in pay.

In April, 1983, Mr. Sperry wrote a letter to Michael F. Malone, Dean of Graduate Studies, to discuss possibilities of early retirement and requesting a salary adjustment for the last three years. The essence of his proposal stated:

> Before seriously considering an early retirement, it is imperative that my final average three year salary be increased significantly. As you know, according to Regents guidelines, my current salary is below their guidelines. . .
>
> [T]he total cost to the University for my proposal would be insignificant. The first year savings to MSU would be $7,708.00. Reflecting a total cost of between $5,000.00 and $6,000.00 for the three contract periods. . .
>
> [I] propose the following salary schedule:
>
> 1983-84 -- $37,000.00 (actual cost to MSU - $29,393.00)
>
> 1984-85 -- $40,000.00
>
> 1985-86 -- $43,000.00 (9 month contract, July 1, 1985-March 30, 1986)

3

He wrote a follow-up letter in December, 1986 which stated:

> My original correspondence requested a three year salary adjustment beginning the current academic year. The primary reason was to increase my last three years salary for early retirement purposes.

MSU rejected his original offer, so Mr. Sperry submitted the following request and schedule in his letter:

1) Fiscal year 84-85, I receive a Regents contract with my raise equal to the average MSU faculty raise for this period.

2) Beginning July 1, 1985, I receive a Regents contract to the end of March 30, 1986 (9 months). During this period the contract would include an average faculty increase. I also receive an additional ½ years contract salary based upon the current contract. Succinctly, I receive 1½ times my contracted salary paid to me in 9 months instead of 12 months. During this period, I would continue to earn sick leave and vacation time.

3) In the event a universally applied incentive is offered, all MSU employees opting for early retirement, the above agreement would not prejudice me.

In the conclusion of his letter, he stated:

> If a satisfactory arrangement is reached between the University and myself, I will offer a statement agreeing not to pursue a past wage greivance. [sic] (Emphasis added.)

In a third letter, Mr. Sperry wrote a revised proposal, changing only the second provision's term of "1/2 year" to "1/3" and "1 1/2" to "1 1/3". He restated his agreement "not to pursue a past wage grievance" if "the [proposed] agreement is reached."

After an agreement was reached, Mr. Sperry wrote a formal resignation letter on February 9, 1984, to be

4

effective as of March 31, 1986. These letters of correspondence comprise the "retirement agreement," which is central to this dispute.

One year after agreement on the terms of retirement, Mr. Sperry for the first time sought conversion compensation from MSU in a letter to the Vice President for Academic Affairs, Dr. Stuart Knapp. He contended that at the time of the 1967 conversion, he was offered a 23% salary increase, received a 13% increase, and 10% is still due and owing as conversion compensation. Applied retroactively, this amounts to nearly $30,000 of conversion compensation.

I

Did the District Court err in concluding that the retirement agreement entered into between MSU and Mr. Sperry constituted a complete waiver and release of all claims he is now asserting?

The District Court made the following pertinent findings of fact and conclusions of law:

Finding of Fact:

#7: On May 11, 1967, plaintiff signed an agreement by which he accepted the stated terms on the change of period of employment. . .

#8: Although alleged, no oral agreement with Robert McCall, plaintiff's supervisor, was established with particularity.

#9: Plaintiff accepted 19 subsequent post-conversion employment contracts.

#10: In the subsequent 19 years after conversion, plaintiff failed to pursue defendant's grievance procedures for any shortage in his salary since 1967.

#11: In January and February 1984, plaintiff negotiated with defendant's Michael P. Malone, then

5

acting vice-president for academic affairs, for an early retirement.

#12: On February 9, 1984, plaintiff confirmed in a memorandum that he found the financial considerations acceptable. In addition, he further stated that his was an official resignation from the university effective March 31, 1986.

#13: As part of the consideration of his retirement, defendant increased plaintiff's final pay to $45,370 for a nine-month period, and plaintiff agreed to "not pursue any past wage grievances".

#14: Defendant fully complied with all the terms and conditions of the retirement agreement.

#15: At no time during plaintiff's retirement negotiation discussions with defendant did he inform defendant he claimed additional compensation due him from his conversion in 1967, 13 years previously.

Conclusion of Law:

#2: Plaintiff accepted the terms set forth in the 1967-68 employment contract without written formal concern as to deferred compensation. The retirement agreement entered into between plaintiff and defendant constitutes a full waiver and release of any claims plaintiff may have had against defendant arising from salary or wages due to plaintiff as a result of his employment with defendant.

#4: Plaintiff is not entitled to any additional compensation for his employment at MSU. (Emphasis added.)

On appeal, Mr. Sperry contends his own oral testimony was sufficient to establish conversion compensation was due. He contends that his direct supervisor indicated his increase in pay did not include the conversion compensation, but promised he would receive that additional salary increase at a later date. Mr. Sperry testified that the only person who would have known of the alleged oral contract was his direct

6

supervisor, Robert McCall. Mr. McCall died in 1971. Mr. Sperry did not raise the issue of conversion compensation until February 1985, one year _after_ signing the retirement agreement.

MSU contends there was no such agreement, and any such claim was waived when he accepted the terms of the retirement agreement.

Waiver is an equitable doctrine, applicable when there is an intentional or voluntary relinquishment of a known right, claim or privilege, or such conduct as warrants an inference of the relinquishment of such right. State v. Statczar (Mont. 1987), 743 P.2d 606, 44 St.Rep. 1668; Kelly v. Lovejoy (1977), 172 Mont. 516, 565 P.2d 321.

Release is defined as the abandonment of a claim to the party against whom it exists and may be gratuitous or for consideration.

> It is fundamental that an effective release can be consummated without resort to a particular form of words, for "all that is necessary is that the words show an intention to discharge." (Citations omitted.)

Melo v. National Fuse and Powder Co. (D.Colo. 1967), 267 F.Supp. 611. To be enforceable, a release must at a minimum be unambiguous, explicit, and unequivocal. Simonson v. Travis (Utah 1986), 728 P.2d 999, 1002. In Montana, the law of contracts governs releases. Westfall v. Motors Ins. Corp. (1962), 140 Mont. 564, 374 P.2d 96.

We conclude that Mr. Sperry's signing of nineteen, one-year contracts and cashing paychecks over the past nineteen years without complaint of no conversion compensation, in combination with his acceptance of the retirement agreement and his promise not to pursue a past wage grievance, constitute a complete waiver and release.

7

An Alaskan Supreme Court holding is comparable to the case at bar. In that case, the note maker raised no objection to the credit union's alleged failure to collect interest according to the terms of the loan agreement. This continued for a three-year period, when each lot subject to security agreement was sold, despite the fact he was required to sign the deed to complete the sale of each lot. For each sale, he had an opportunity to examine the ledger sheet that showed how the escrow company intended to disburse the proceeds of each sale. The court held he waived his right to assert that the credit union breached the loan agreement by failing to collect interest on the sale of each lot. Jackson v. Nangle (Alaska 1984), 677 P.2d 242, 249.

In the same way, Mr. Sperry signed his pay checks for nineteen years with knowledge of any increases and decreases, but without raising objection regarding the lack of any conversion compensation.

We conclude that there exists substantial credible evidence to support the District Court's conclusion that Mr. Sperry's signing of the retirement agreement waived and released his right to any wage claims. We affirm the District Court on this issue.

II

Is Mr. Sperry's claim barred by the doctrine of laches?

On appeal, MSU contends Mr. Sperry's claim is barred by laches. Although this was not a part of the findings of fact and conclusions of law of the District Court, the defense of laches was asserted in the Final Pre-Trial Order, so it is subject to review by this Court.

Mr. Sperry testified that his direct supervisor indicated his increase in pay did not include the conversion compensation, but promised he would receive that additional salary increase at a later date. MSU contends Mr. Sperry received a

8

13% increase, which included his conversion compensation, and there was no promise by anyone to pay him further increases.

The only person other than Mr. Sperry, who would have known of the alleged oral contract was his direct supervisor, Robert McCall. Mr. McCall died in 1971. Yet, the only time Mr. Sperry brought the issue of conversion compensation to the attention of anyone else at MSU was in his February 1985 letter to Michael F. Malone, long after Robert McCall's death, and after completing the retirement agreement. He did not raise the issue again until after he retired.

MSU contends that Mr. Sperry's claim for such conversion compensation is now barred by the equitable doctrine of laches. We agree. Laches exists where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable. Brabender v. Kit Mfg. Co. (1977), 174 Mont. 63, 67-68, 568 P.2d 547, 549. Where a party is actually or presumptively aware of his rights but fails to act, laches is appropriate. Clayton by Murphy v. Atlantic Richfield Co. (1986), 221 Mont. 166, 170, 717 P.2d 558, 561. A party is held to be aware of their rights where the circumstances he or she knows of are such as to put an ordinarily prudent person on inquiry. Johnson v. Estate of Shelton (Mont. 1988), 754 P.2d 828, 831, 45 St.Rep. 887, 891. Mr. Sperry asks for a retroactive wage increase for the last nineteen years of his employment. He does not allege that he was unaware of this claim during that time. We hold Mr. Sperry's claim is barred by the doctrine of laches.

Although MSU argues that Mr. Sperry's claim is also barred by the statute of limitations, we find it unnecessary to discuss that issue in light of our holding on laches. Furthermore, we will not address Mr. Sperry's contentions that MSU breached the implied covenant of good faith and fair

9

dealing. This Court will not address on appeal an issue not presented to the District Court. Wyman v. DuBray Land Realty (Mont. 1988), 752 P.2d 196, 45 St.Rep. 621.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices