No. 99-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 28

298 Mont. 194

995 P. 2d 422

KIM MORGAN, a minor; DAVID MORGAN

and THERESA MORGAN, parents and natural

guardians of KIM MORGAN,

Plaintiffs and Appellants,

v.

GREAT FALLS SCHOOL DISTRICT NO. 1,

Defendant and Respondents

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Joseph C. Engel, III, P.C., Attorney at Law; Great Falls, Montana

For Respondent:

William J. Gregoire, Smith, Walsh, Clarke & Gregoire;

Great Falls, Montana

_____

Submitted on Briefs: December 9, 1999

Decided: February 1, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1. The Plaintiffs, David and Theresa Morgan, brought this action in the District Court for the Eighth Judicial District in Cascade County on behalf of their minor daughter, Kim Morgan. They alleged that the Defendant, Great Falls School District No. 1, through the acts of its employee, Patricia Richard, had negligently supervised Kim during recess, and that as a result, Kim was injured. Following a trial by jury, the jury found no negligence on the part of the Defendant. The Plaintiffs filed a motion for a new trial which the District Court denied. Plaintiffs appeal from the judgment in favor of the Defendant. We affirm the judgment of the District Court.

¶2. The sole issue on appeal is whether there was sufficient evidence to support the jury's verdict.

## FACTUAL BACKGROUND

¶3. In November 1995, nine-year-old Kim Morgan was a special education student at Sacajawea Elementary School in Great Falls, Montana. Kim suffered from mental retardation as a result of a brain disease and was prone to experience seizures. Kim had recently returned to her special education classes following brain surgery which she underwent in August 1995.

¶4. On November 8, 1995, the special education teacher, Stephanie Powell, was absent, and the special education assistant, Patricia Richard, substituted as the special education

teacher. During recess, Richard spotted Kim on the "high tower," a piece of playground equipment which has a platform several feet off the ground and a metal pole on which the children slide down to the ground. According to Richard's testimony, she saw Kim slide down the pole and at a point two or three feet from the ground, Kim let go and fell to the ground. As a result of her fall, Kim suffered a fracture of her left tibia.

¶5.There were approximately 11 students in the special education class at Sacajawea Elementary School. Parents of the special education students were allowed to place restrictions on their children's use of equipment, including playground equipment; however, the Morgans had not restricted Kim's use of the equipment. Ms. Powell had adopted her own rule that the special education students could not play on the high tower.

¶6.At the time of Kim's accident, there were two adults, Patricia Richard and Carrie Holden, assigned to supervise the special education students while at recess. Additionally, Donella Thompson was supervising the 100 regular education students who were also on the playground for recess at the time of Kim's accident. Among the 11 special education students at recess, 5 of the students, including Kim, were low functioning and required close supervision. Kim's Individual Evaluation Plan, prepared by the school in March 1995, stated that Kim "requires <u>close</u> supervision on the playground and in and out of the classroom."

¶7.On August 20, 1997, the Morgans filed a complaint on behalf of their daughter Kim, alleging that the Defendant's employee, Patricia Richard, had failed to properly supervise Kim while on the playground and therefore, had acted negligently. In February 1999, the issue of Richard's negligence was tried to a jury. Richard was the only eyewitness to Kim's accident and she testified that she did not see Kim on the high tower until she was already sliding down the pole and as a result there was nothing that she could do but watch Kim slide down the pole. The jury returned a verdict in favor of the Defendant. It found Richard had not acted negligently. On March 10, 1999, the Plaintiffs filed a motion for a new trial, based on the contention that there was not substantial credible evidence to support the jury's verdict. Following a hearing to consider the Plaintiffs' motion, the District Court denied Plaintiffs' motion for a new trial. Plaintiffs now appeal the jury's verdict and the District Court's denial of their motion for a new trial.

## STANDARD OF REVIEW

¶8.In *Lee v. Kane* (1995), 270 Mont. 505, 893 P.2d 854, this Court discussed our standard

of review of a jury verdict in a civil case:

Our scope of review of jury verdicts is necessarily very limited. This Court will not reverse a jury verdict which is supported by substantial credible evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence may be inherently weak and conflicting, yet it may still be considered substantial. It is well established that if the evidence is conflicting, it is within the province of the jury to determine the weight and credibility to be afforded the evidence. Finally, upon reviewing a jury verdict to determine if substantial credible evidence exists to support the verdict, this Court must view the evidence in the light most favorable to the prevailing party.

*Kane, 270 Mont. at 510-11, 893 P.2d at 857.*

¶9.Moreover, in *Sandman v. Farmers Insurance Exchange*,1998 MT 286, 291 Mont. 456, 969 P.2d 277, we stated the following:

[I]n our review of jury verdicts in civil cases, we have stated that the prevailing party is entitled to any reasonable inference that can be drawn from the facts which are proven; that we do not decide whether the verdict was correct or whether the jury made the right decision; that we will not lightly overturn the verdict of a finder of fact, especially a jury; that we will not disturb the jury's findings unless they are inherently impossible to believe; that the test of substantial credible evidence allows for reversal only if there is an absence of probative facts to support the verdict; that substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance; and, that in order to rise to the level of substantial evidence, the evidence must be greater than trifling or frivolous.

*Sandman, ¶ 41(internal citations omitted).*

## DISCUSSION

¶10.Was there sufficient evidence to support the jury verdict?

¶11.The Plaintiffs argue that the evidence was not sufficient to support the jury's verdict that the Defendant's employee, Patricia Richard, was not negligent. The Plaintiffs contend that there were two dispositive duties: (1) the duty to provide close supervision of Kim;

and (2) the duty to keep the special education students off the piece of playground equipment known as the high tower. The Plaintiffs argue that based on the trial testimony of Richard, the jury should have found that Richard was either negligent because she breached her duty to provide close supervision of Kim or because she breached her duty to not allow a special education student on the high tower. In other words, they contend that Richard either allowed Kim to play on the high tower, or Richard was not closely supervising Kim and she was able to climb onto the high tower unnoticed.

¶12. At trial, Richard, the only eyewitness to Kim's accident, testified that the high tower was "off limits for all of our [special education] children." She further testified that she did not see Kim climbing up the high tower and that the first time she noticed Kim on the high tower was "when she was sliding down the pole." Richard also testified that "I did not allow her to go on the high tower. She was up there in just a matter of seconds. And we had other children to watch. She was not the only child that we had to watch." She gave the following illustration of her responsibilities:

I was watching all the children . . . but there were about five of them that needed a lot of special watching. We had a boy in a wheelchair that I mentioned. And we had another child that was autistic and used to head bang against the school building and against poles . . . and we had to watch him closely so he didn't do that and injure himself. There was another child who used to instigate things, she'd tease him and get him going and he would get upset and do those . . . .

Some children would sometimes sit down and wet their pants. The problem is a behavior problem. We had another child that had brain surgery that had seizures. She wore a helmet. We had to watch her closely. She also liked to get hold of the wheelchair if we weren't watching closely and try to push it. We tried to always have the wheelchair with the brakes on so she could not do that. But sometimes this child would take the brakes off and move around the playground.

He needed to move around also to get exercise with his arms. He likes to shoot baskets I used to toss the ball around to get some exercise . . . those were mainly the ones that needed close supervision other than Kim.

There was no allegation in the complaint or pretrial order that the Defendant was negligent for having inadequate staff on the playground.

¶13.The jury was instructed as follows:

Every person is responsible for injury to the person of another, caused by his negligence. Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances.

¶14.Because we are limited in our review of the jury's verdict, we may only consider whether or not the verdict was supported by substantial evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. *See Sandman*, ¶ 41. Based on Richard's testimony that she did not purposely allow Kim to play on the high tower; that she also had other responsibilities; that she first noticed Kim on the high tower as she was sliding down the pole; and it would only have taken Kim seconds to climb onto the high tower, we conclude that there was evidence, which if believed, could support a finding that Richard did not breach her duty of ordinary care. Therefore, we conclude that the jury's verdict was supported by substantial credible evidence.

¶15.Patty Richard had a duty to closely supervise Kim. The fact that Patty Richard did not see Kim climb onto the high tower does not, as the Plaintiffs contend, require a finding that Patty Richard breached her duty to closely supervise Kim. The determination of whether Patty Richard acted reasonably was a question properly submitted to the jury, which was in the best position to evaluate the weight of the evidence.

¶16.Plaintiffs also contend that the testimony of Patty Richard was impeached by prior inconsistent statements and therefore not entitled to belief. The Plaintiffs rely on *Wise v. Ford Motor Company*, in which we stated that "[i]f conflicting evidence exists, the credibility and weight given to the evidence is in the jury's province and we will not disturb the jury's findings unless they are inherently impossible to believe." *Wise v. Ford Motor Co.* (1997), 284 Mont. 336, 339, 943 P.2d 1310, 1312. The Plaintiffs contend that the jury's verdict was not supported by substantial credible evidence because Patricia Richard gave statements prior to trial which differed from her trial testimony.

¶17.At trial, Patricia Richard gave the following testimony:

Q. Okay. I want to have you take us to exactly the moment when you noticed Kim.

A. I noticed her when she was sliding down the pole.

Q. You didn't see her climbing up that?

A. I did not see her climbing up. I could have probably gotten to her if she was climbing up. It only takes a few seconds to get up those steps.

Following this exchange, Plaintiffs' counsel played a portion of a tape from an interview Patricia Richard gave to a private investigator in April 1996. Plaintiffs' counsel then questioned Patricia regarding her statements made in the interview:

Q. Yes. Would you read the second sentence in that portion?

A. (Patricia then read the following from her transcribed interview) We were watching her and then it's something that you almost need to get down by yourself. You have to slide down the pole because it has a chain step to go up. And she seemed to be doing fine with that. But she just was about three feet from the ground and she just dropped to the ground.

Q. Now, the context of that is, ma'am, that she seemed to be doing fine with the chain step; is that right?

A. No, I mean she seemed to be doing fine sliding down the pole. I did not see her go up the chain step. That's what I was referring to. . . . .

Q. Turn to page 4 of the statement, will you please? The question is, the fifth one down, she was allowed to play on anything that all the other kids played with? And your answer, would you read that, please?

A. Oh, okay. As far as we were told, we weren't told anything different. We don't allow her there now on the hightower.

Q. So you're saying we don't allow her there now in February of 1996, but in November of 1995 you hadn't been told anything different and you were allowing her to go on there; isn't that true?

A. No. We were not allowing her to go on there. And I don't know why the word "now" is there. It should have been "now or ever."

Q. That's what you are saying now, but at this time today. But at that time you had said first of all earlier that you had kept an eye on her as she was going up there and she seemed to be doing all right with going up the chains; isn't that right?

A. I did not say I saw her go up the chain steps. I did not see that. I only saw her come down the pole. I said she seemed to be doing fine. And I meant she seemed to be doing fine sliding down the pole as I was approaching her. . . . .

Q. Turn to page 6, please, of this statement. Midway down the question is, do you have any idea why this would have . . . been Kim's first time to play on this pole? Why hadn't she done it in the two weeks before that? Would you read your answer, please?

A. And she may have done it. I had not seen her up there before. She seemed fine to go up there. And, but we could not - - we could, like I said, we were watching her.

Q. So isn't it true that the context of that is that you were watching her and she seemed fine to go up there?

A. Again, I'm saying - - what I meant there was she seemed fine coming down the pole.

Q. I know what you are saying now. But that's what you said then; isn't that true ma'am?

A. That's what I said.

¶18.Inconsistent statements by a witness should be considered when assessing the witness' credibility, however, witness credibility is a matter for determination by the jury after proper instructions from the court. *See Whiting v. State* (1991), 248 Mont. 207, 214, 810 P.2d 1177, 1181. In this case, the jury was instructed as follows:

You are the sole judges of the facts in this case. It is up to you to determine which witnesses you will believe and what weight will be given their testimony. In doing so, you may consider, for example, such things as their demeanor, apparent bias or prejudice, motive to testify truthfully or falsely, consistency, ability and opportunity to perceive, recall and communicate, or the over-all reasonableness of their testimony in the light of all the other evidence.

At the outset, a witness is entitled to a presumption that his or her testimony is truthful.

This presumption may be overcome, however, by any evidence tending to disprove that testimony or raising a substantial question as to the witness' credibility. A witness false in one part of his or her testimony is to be distrusted in others. However, this rule does not apply to a witness who unintentionally commits an error. If weaker and less satisfactory evidence is offered and it appears that it is within the power of the party to offer stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.

¶19. Our review of Patricia Richard's deposition taken on November 19, 1997, reveals that statements made during her trial testimony and her deposition testimony, regarding Kim Morgan's accident, were substantially similar. The only alleged inconsistencies were the conflicts between her trial testimony and the statement she gave to the investigator in 1996. These statements were thoroughly scrutinized by Plaintiffs' counsel during his examination of Patricia Richard at trial. As a result, the jury was aware of any statement previously made which might have been inconsistent with her testimony at trial.

¶20. Because witness credibility is a matter for the jury and the jury was properly instructed on that issue, we must defer to the jury's evaluation of Patricia Richard's credibility. Accordingly, we conclude that there was substantial credible evidence to support the jury's verdict that the Defendant, through the acts of its employee, Patricia Richard, was not negligent. We therefore affirm the jury's verdict and the District Court's denial of Plaintiffs' motion for a new trial.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER