No. 02-579

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 114

THOMAS L. BENSON and SUSAN E. BENSON,
individually and as husband and wife,

        Plaintiffs and Appellants,

    v.

DIVERSE COMPUTER CORPORATION, a Wisconsin
and Florida corporation, a/k/a PRONTO PROGRESS
SOFTWARE DEVELOPMENT,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 2001-0083,
Honorable Diane G. Barz, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Robert C. Griffin and Kellie M. Gaston, Crowley, Haughey, Hanson,
Toole & Dietrich, P.L.L.P., Billings, Montana

        For Respondent:

                Brent R. Cromley and Michele L. Jensen, Moulton, Bellingham,
Longo & Mather, P.C., Billings, Montana

                Arnold R. Leuders, III, General Counsel, Waukesha, Wisconsin

Submitted on Briefs:  April 10, 2003

Decided:  May 4, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Thomas and Susan Benson (collectively, Bensons) brought this action against Diverse Computer Corporation, a/k/a Pronto Progress Software Development (hereinafter, Diverse Corp.), in the Thirteenth Judicial District Court, Yellowstone County, alleging the corporation had breached its contract to repurchase the Bensons' shares in the company. The jury found that Diverse Corp. had breached its contract with the Bensons, causing them damages in the amount of $64,933.60, but nonetheless entered a verdict in favor of the corporation, finding that Diverse Corp. had proven at least one of its affirmative defenses of rescission, waiver, release, or accord and satisfaction. Following entry of judgment in favor of Diverse Corp., the Bensons brought a combined motion in District Court for judgment as a matter of law, amended judgment, or a new trial. On July 16, 2002, the District Court denied the Bensons' motion. From this order and the verdict entered in Diverse Corp.'s favor, the Bensons appeal. We reverse and remand.

¶2 The Bensons raise the following issues on appeal:

¶3 1. Was the jury's verdict supported by substantial evidence?

¶4 2. Did the District Court err in excluding the testimony of Renee Southworth as hearsay?

¶5 3. Did the District Court err in refusing to give the Bensons' Proposed Instruction No. 38 concerning rescission of a contract following breach?

¶6 4. Did the District Court err when it instructed the jury on the legal principle of rescission?

¶7     5. Did the District Court err in denying the Bensons' combined motions for a new trial, judgment as a matter of law, and amended judgment?

¶8     Because we determine the first issue is dispositive, we decline to address the remaining issues on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

¶9     Diverse Corp. is a small, closely held corporation, located in Wisconsin, specializing in computer software development.  Timothy Proksch (Proksch), Mrs. Benson's brother, founded the corporation and acts as the company's president and principle shareholder.

¶10    In March of 1992, the Bensons purchased 200 shares of stock in Diverse Corp., making them the second largest shareholder in the company.  In the years that followed, Diverse Corp. made several offers to buy-back the Bensons' shares, each of which the Bensons rejected.

¶11    Familial relationships between the parties became strained with the commencement of divorce proceedings between Proksch and his ex-wife in 1999.  By the early part of 2000, Proksch and the Bensons had become bitterly estranged. On May 12, 2000, the Bensons offered to sell their 200 shares to the corporation for $400 per share, or a total of $80,000, in order to sever all ties to Proksch and the corporation.

¶12    Diverse Corp. was unwilling to pay $400 per share, but was very interested in purchasing the Bensons' shares for a reasonable value in order to obtain a severance of the Bensons' interest in the corporation.  In a letter dated May 18, 2000, Proksch offered to purchase the Bensons' shares for book value, or $282.32 per share, plus 15 percent, for a

3

total of $64,933.60 for all 200 shares. To accept the offer, the Bensons were instructed to "fill out the back of the stock certificate(s) and mail the signed stock certificates to the Corporation."

¶13    On June 15, 2000, the Bensons mailed a signed stock certificate to the corporation, representing their 200 shares in Diverse Corp., along with a letter stating that by accepting the corporation's offer, they were not relinquishing their rights under "any state or federal statute or regulation."

¶14    Although the Bensons had signed their original stock certificate as instructed, Diverse Corp. found the language preserving the Bensons' rights under state and federal law unacceptable. On June 19, 2000, Diverse Corp. declined to proceed with its purchase of the shares and returned the signed stock certificate to the Bensons.

¶15    Upon receipt of the returned stock certificate, the Bensons became concerned about possessing an endorsed stock certificate, and therefore requested a new certificate be issued by the corporation. In response to their request, Diverse Corp. suggested the Bensons write over the endorsement with their initials, or, alternatively, that the Bensons post a $65,000 indemnity bond and a new certificate would be issued. Dissatisfied with either option, the Bensons made a personal visit to the corporation in Wisconsin, where they surrendered their endorsed stock certificate in exchange for a new one.

¶16    On January 30, 2001, the Bensons brought suit against Diverse Corp. in District Court for breach of contract, asserting damages in the amount of $64,933.60, the amount the corporation had originally agreed to pay for their shares. The Bensons alleged that Diverse

4

Corp.'s May 18, 2000 letter constituted an offer to repurchase their shares, which they had accepted by sending their endorsed stock certificate to the corporation. In response, Diverse Corp. denied the existence of a contract, and argued that the Bensons' reply to its May 18, 2000 offer was not an acceptance, but a counteroffer, since it included a letter stating that the Bensons were retaining all their rights under state and federal law. Alternatively, Diverse Corp. maintained that, if a contract did exist between the parties, the Bensons had waived their rights under it by forfeiting the endorsed certificate to the corporation in favor of a new one, and failing to immediately assert their rights under the contract in District Court.

¶17 The matter proceeded to trial before jury on April 15 and 16, 2002. At trial, the Bensons sought to introduce the testimony of Renee Southworth (Southworth), a friend of Mrs. Benson, concerning the Bensons' statement to her that they believed they had a contract with Diverse Corp., and that the corporation had breached the contract by refusing to purchase their shares. Prior to Southworth's testimony, however, Diverse Corp. objected to the testimony as inadmissible hearsay. The District Court sustained the objection over the Bensons' offer of proof, and the testimony was not presented.

¶18 On April 16, 2002, the jury returned a special verdict finding that a contract for the purchase of the shares existed between the Bensons and Diverse Corp., that Diverse Corp. had breached the contract, and that the Bensons were entitled to receive the contract amount of $64,933.60. The jury further concluded, however, that Diverse Corp. had proven by a preponderance of the evidence at least one of its affirmative defenses of rescission, waiver,

5

release, or accord and satisfaction. On April 23, 2002, the District Court entered judgment in favor of Diverse Corp. and dismissed the lawsuit.

¶19 The Bensons thereafter brought a combined motion in District Court for judgment as a matter of law, amended judgment, or a new trial, asserting that the court had improperly excluded the testimony of Renee Southworth and had erroneously instructed the jury concerning the legal principle of rescission. The Bensons further maintained that the defense verdict was not supported by the law or evidence produced at trial. The District Court denied the Bensons' motion on July 16, 2002, and this appeal followed.

## STANDARD OF REVIEW

¶20 Although the scope of our review is necessarily very limited, we review a jury's verdict in a civil case to determine whether substantial credible evidence in the record supports the verdict. *Morgan v. Great Falls School Dist. No. 1*, 2000 MT 28, ¶ 8, 298 Mont. 194, ¶ 8, 995 P.2d 422, ¶ 8. We have defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. *Barrett v. Asarco, Inc.* (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080. The test of substantial credible evidence allows for reversal only if there is an absence of probative facts to support the verdict. *Morgan*, ¶ 9 (citing *Sandman v. Farmers Ins. Exchange*, 1998 MT 286, 291 Mont. 456, 969 P.2d 277). In determining whether substantial evidence supports the verdict, we view the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences from the facts proven in favor thereof. *Morgan*, ¶¶ 8-9.

6

**DISCUSSION**

¶21 **Was the jury's verdict supported by substantial credible evidence?**

¶22 The Bensons argue that the evidence produced at trial was insufficient to support the jury's verdict that Diverse Corp. proved any of its affirmative defenses of rescission, release, waiver, or accord and satisfaction. They maintain that there is no evidence that they voluntarily or intentionally relinquished any known rights against the corporation.

¶23 In response, Diverse Corp. contends that the jury could have inferred from the evidence presented at trial that the Bensons intended to rescind, release, or waive their rights under the contract, or to enter an accord and satisfaction with Diverse Corp. In support of this proposition, the corporation relies on the following facts: (1) that the Bensons submitted their endorsed stock certificate to the corporation in favor of a new one following the breach; and (2) that the Bensons made no immediate demand on the corporation for damages, but continued to assert their rights as shareholders. For the reasons set forth below, we conclude that such evidence is insufficient to support a finding of intent, a material element necessary to each of Diverse Corp.'s affirmative defenses.

¶24 In reaching this determination, we necessarily examine the components of each affirmative defense. In so doing, we begin with Diverse Corp.'s claim that the Bensons agreed to rescind the contract. Pursuant to § 28-2-1711, MCA, a party to a contract may rescind only in the following cases:

> (1) if the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the

7

party as to whom he rescinds or of any other party to the contract jointly interested with such party;

(2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

(3) if such consideration becomes entirely void from any cause;

(4) if such consideration, before it is rendered to him, fails in a material respect from any cause; or

(5) *if all the other parties consent.*

(Emphasis added.)

¶25　In this case, there is no evidence or allegation of duress, menace, fraud, or undue influence, nor is there any evidence of failed consideration. Rather, this defense is supported only by Diverse Corp.'s contention that the Bensons mutually consented to rescind the contract by exchanging the endorsed stock certificate in favor of a new one. At trial, however, the Bensons testified that they requested a new certificate only because they felt the endorsed certificate was like having "a fully endorsed check in their back pocket." Diverse Corp. offered no evidence of an intent to the contrary.

¶26　We have stated that to rise to the level of substantial evidence, the evidence must be greater than trifling or frivolous. *Sandman,* ¶ 41. In this case, we conclude that the act of exchanging a compromised stock certificate in favor of a new one following a breach of contract is insufficient, without more, to support a claim for rescission.

¶27　This conduct is likewise inadequate to make a case for release or accord and satisfaction. Release is defined as the abandonment of a claim to the party against whom it exists. *Sperry v. Mont. St. U.* (1989), 239 Mont. 25, 30, 778 P.2d 895, 898. In *Watters v. Guarantee Nat. Ins. Co.*, 2000 MT 150, ¶ 39, 300 Mont. 91, ¶ 39, 3 P.3d 626, ¶ 39 (overruled in part on other grounds by *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 21,

8

315 Mont. 519, ¶ 21, 70 P.3d 721, ¶ 21), we stated that "a release, as a matter of law, is nothing more than an accord and satisfaction, or one of several ways in which an obligation, contractually, may be discharged or 'settled' for less than or for something different than that owed." *See also* §§ 28-1-1401 and 1402, MCA. To be enforceable, a release must at a minimum be unambiguous, explicit, and unequivocal. *Sperry*, 239 Mont. at 30, 778 P.2d at 898.

¶28 In this case, there was no evidence presented from which the jury reasonably could have inferred that the parties entered a subsequent agreement to release or discharge the corporation's obligations under the original contract to purchase shares. In fact, Proksch admitted on cross-examination that the corporation never requested a release from the Bensons nor discussed the possibility of obtaining one.

¶29 Diverse Corp.'s claim that the Bensons entered an accord and satisfaction suffers from the same infirmity. There is no evidence on the record that the Bensons understood that by exchanging their stock certificate they were agreeing to accept something less than or different from the original obligation. Furthermore, the record reveals no evidence showing that any such obligation was satisfied by the corporation. We have stated that where there is no satisfaction, the original debt is not extinguished and the debtor remains liable for damages. *Watkins v. Williams* (1994), 265 Mont. 306, 314, 877 P.2d 19, 23. Accordingly, this defense also fails for lack of substantial evidence.

¶30 In support of its remaining defense, waiver, Diverse Corp. contends that the Bensons waived their rights under the contract by failing to make an immediate demand upon the

9

corporation for payment. The corporation additionally argues that the Bensons waived any rights they may have had under the contract by continuing to exercise their rights as shareholders (i.e. examining company records and minutes) following the breach. While it is true that a waiver may be implied by a course of action or conduct which induces the belief that the intention and purpose was waiver, *Stewart v. Covill and Basham Const., L.L.C.*, 2003 MT 220, ¶ 8, 317 Mont. 153, ¶ 8, 75 P.3d 1276, ¶ 8, such implied waiver requires a detrimental reliance by the party who is led by the conduct to believe a waiver has occurred. *Reiter v. Yellowstone County* (1981), 192 Mont. 194, 202, 627 P.2d 845, 850. Even assuming *arguendo* that the Bensons' decision to wait and "weigh their options" for approximately six months following the breach could reasonably give rise to a waiver, the corporation has failed to show any detrimental reliance on its part. Nor do we think that the Bensons waived their rights under the contract by asking to review corporate minutes and records which they were already entitled to as shareholders.

¶31    Thus, even drawing all legitimate inferences in favor of Diverse Corp., we cannot conclude that the corporation proved by a preponderance of the evidence that the Bensons intended to rescind the contract, waive their rights to recover under the stock certificate, or otherwise release Diverse Corp. from its obligations. While it is only in rare cases that a jury verdict should be set aside, in this case we conclude that the complete absence of any probative evidence supporting the corporation's affirmative defenses commands reversal.

¶32    On appeal the parties do not take issue with the jury's finding that a contract existed, was breached by the corporation, and that the Bensons sustained damages in the amount of

$64,933.60. Accordingly, we reverse only that portion of the verdict finding Diverse Corp. proved by a preponderance of the evidence at least one of its affirmative defenses, and remand this matter to the District Court for entry of judgment in favor of the Bensons for $64,933.60.

¶33 Reversed and remanded with instructions for entry of judgment consistent with this opinion.


/S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN HENSON
Hon. John Henson, District Judge,
sitting in place of Justice John Warner